IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRITTANY ALLISON,

    Plaintiff,

vs.                                                                 Civ. No. 18-401 KG/SCY

THE CITY OF FARMINGTON,
FARMINGTON POLICE DEPARTMENT,
STEVEN HEBBE, in his individual capacity, AND
BRIAN JOHNSTON, in his individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants' Motion for Summary Judgment as to All 42 U.S.C. § 1983 Counts of Plaintiff's Complaint (Motion for Summary Judgment), filed March 4, 2019. (Doc. 51). Plaintiff filed a response on April 15, 2019, and Defendants filed a reply on May 13, 2019. (Docs. 55 and 62). Having reviewed and considered the Motion for Summary Judgment, the accompanying briefing, and exhibits, the Court grants the Motion for Summary Judgment.

A. *Background*

    1. *Plaintiff's Complaint (Doc. 1)*

Plaintiff, a former police officer with the Farmington Police Department (FPD), brings this employment lawsuit against the FPD, the City of Farmington, FPD Chief of Police Steven Hebbe (in his individual capacity), and FPD Corporal Brian Johnston (in his individual capacity). Plaintiff's claims arise from alleged issues she had beginning in January 2017 and ending in July 2017 related to her ability to express breast milk while employed by the FPD. Johnston was Plaintiff's direct supervisor during the times relevant to this lawsuit.

The Motion for Summary Judgment only pertains to Counts IV and V of the Complaint, Plaintiff's Section 1983 claims. Plaintiff brings Counts IV and V against, presumably, all Defendants for violations of her Fourteenth Amendment right to equal protection. In Count IV, Plaintiff specifically alleges that Defendants subjected her "to an intentional hostile work environment and unlawful harassment because of her status as a nursing mother with protected federal rights." (Doc. 1) at ¶ 83. In Count V, Plaintiff alleges that Defendants subjected her to gender discrimination by their deliberate indifference to her "rights and privileges as a nursing mother." *Id.* at ¶ 94. The Court notes that Plaintiff also brought a Fair Labor Standards Act (FLSA) claim in Count I in which she claims Johnston failed to accommodate her need to express breast milk at work.[1] *Id.* at ¶¶ 52-62.

2. *Factual Summary*[2]

In November 2016, Plaintiff returned from maternity leave to work in her FPD patrol position during the swing shift. (Doc. 1) at ¶ 14. Plaintiff's supervisor on the swing shift, Tamara Smith, complied with Plaintiff's request for breaks to express breast milk. *Id.* at ¶ 15.

On January 8, 2017, the FPD moved Plaintiff to a day shift. *Id.* at ¶ 16. Johnston supervised Plaintiff beginning in mid-January 2017. (Doc. 55-1) at 21, depo. at 164. Johnston told Plaintiff to express breast milk during her lunch break. *Id.* at 1. Plaintiff, however, often could not do so due to the call load. *Id.* Because Plaintiff was not able to express enough breast milk at work, her milk supply dwindled causing health problems for her child. *Id.*

---

[1] The Court dismissed Count I on June 20, 2019. (Doc. 69).

[2] Unless otherwise noted, this factual summary contains uncontested material facts viewed in the light most favorable to Plaintiff.

According to Plaintiff, Johnston would "shut her down" when she tried to speak to him about breaks to express breast milk. *Id.* at 20, depo. at 113. Johnston would also "ignore" Plaintiff, glare at her, give her "dirty looks," and wrote her "up for everything that in the past happened…." *Id.* at 21, depo.at 164-65; (Doc. 51-1) at 3, depo. at 207.

On April 17, 2017, Johnston contacted Lt. Casey Malone about Plaintiff's work performance. (Doc. 55-1) at 1. Malone advised Johnston to speak with Plaintiff. *Id.* Johnston spoke with Plaintiff later that day and reported to Malone that Plaintiff mentioned she had post-partum depression. *Id.* Malone then met with both Johnston and Plaintiff noting that he sensed Plaintiff was uncomfortable in Johnston's presence. *Id.* Malone, therefore, asked Johnston to step out of the room. *Id.* Plaintiff opened up to Malone, stating she was feeling overwhelmed. *Id.* Plaintiff also stated was unable to express breast milk at work often enough, which caused her milk to dwindle and issues with her baby. *Id.* Plaintiff told Malone that Johnston asked her to express breast milk at lunch but because of the call load she was unable to do so. *Id.* Moreover, because Plaintiff moved outside of the city limits, Plaintiff could no longer go home to express breast milk and had to use the women's locker room and the "ICC sub station." *Id.* Plaintiff did not feel comfortable expressing breast milk at those locations because people walked in. *Id.* Malone told Plaintiff that whenever she needed to express breast milk she would be permitted to do so. *Id.*

Malone spoke with Johnston shortly thereafter about the situation.[3] *Id.* Malone then spoke with Hebbe and they came up with a better place for Plaintiff to express breast milk. *Id.*

---

[3] Johnston informed Malone he only told Plaintiff to try to express breast milk earlier in the day because of the afternoon call load. (Doc. 55-1) at 1.

Hebbe further stated that, if necessary, Plaintiff could be temporarily reassigned to a "light-duty schedule." *Id.*

The next day, April 18, 2017, Malone again met with Plaintiff. *Id.* at 2. He told Plaintiff she could use a vacant office with a couch and other furniture, and locks, to express breast milk. *Id.* Malone also offered the option of a four to six-week temporary reassignment. *Id.* Plaintiff told Malone she would think about the temporary reassignment and get back to him in a few days. *Id.*

On April 19, 2017, Malone spoke with Sgt. Brandon Lane who previously met with Plaintiff and discussed with Plaintiff the time she needed for expressing breast milk. *Id.* Lane indicated that Plaintiff "was free to do so whenever she needed to." *Id.* Plaintiff also told Lane that she could use her mother-in-law's residence for expressing breast milk. *Id.*

On April 21, 2017, Plaintiff contacted Malone and advised him that she wanted to be temporarily assigned to a modified duty status for about a week and possibly longer. *Id.* Plaintiff indicated that the modified duty status assignment might help her regain her milk supply. *Id.*

Plaintiff began the temporary assignment, an administrative position, on April 24, 2017. *Id.* The administrative position provided Plaintiff with a predicable schedule and access to a private room. *Id.* at 4, depo. at 39-40. Plaintiff spent five weeks working in the administrative position. *Id.* at 21, depo. at 164. Johnston resumed his supervision of Plaintiff after she returned to her regular patrol position and supervised Plaintiff until mid-July 2017. *Id.* Johnston continued to glare at Plaintiff and ignore her, which created a tension-filled environment. *Id.*, depo. at 165.

On June 27, 2017, Johnston met with Plaintiff to write her up and told her that if she wanted a promotion to the district coordinator unit she would "need to leave [his] office with a smile because supervisors are watching how [she] handle[s] this." *Id.* at 22, depo. at 166. Plaintiff, in fact, applied for that promotion but did not receive it. *Id.* at 23-24, depo. at 181-83.

Later that same day, Plaintiff met with Hebbe to discuss Johnston's behavior. *Id.* at 22, depo. at 167. Hebbe spoke to her in a tone that she perceived as "berating." *Id.* In addition, Hebbe told Plaintiff the situation with Johnston "was all a misunderstanding." *Id.* at 22, depo. at 168. After the June 27, 2017, meeting, Hebbe treated Plaintiff coldly and ignored her. *Id.* at 22, depo. at 169.

Plaintiff testified at her deposition that Hebbe and Johnston treated male employees with more respect than they treated her. (Doc. 51-1) at 3, depo. at 206-07. Even so, at some point, Plaintiff admits that Johnston "weakly apologized" to her by stating, "I don't know what else to tell you other than I've told you I'm sorry four times." (Doc. 55-1) at 22, depo. at 168.

Plaintiff submitted three FPD policies in support of her response to the Motion for Summary Judgment. First, Plaintiff submitted a July 11, 2017, policy requiring the FPD "to investigate all complaints against Department employees and allegations of misconduct within the Department…." *Id.* at 10. Second, Plaintiff submitted an April 26, 2107, policy establishing guidelines for the promotion process. *Id.* at 25. Finally, Plaintiff submitted an August 14, 2018, "breastfeeding and breast milk expression" policy. *Id.* at 31. Hebbe approved all three policies.

B. *The Motion for Summary Judgment*

Defendants move for summary judgment on four grounds. First, Defendants argue that, as a matter of law, an alleged violation of the FLSA cannot serve as a basis for a Section 1983 claim. Second, Defendants argue that, as a matter of law, Plaintiff cannot sue the FPD under

5

Section 1983. Third, Defendants argue that the Section 1983 claims against the City of Farmington fail because Plaintiff has not demonstrated that any city policy or custom caused her injury. Finally, Defendants argue that qualified immunity precludes any Section 1983 claim against Johnston and Hebbe in their individual capacities. Plaintiff opposes the Motion for Summary Judgment in its entirety.

*C. Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). The Court must grant qualified immunity unless the plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). Unlike

6

other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Estate of Booker*, 745 F.3d at 411. "This is a heavy burden." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017).

D. Discussion

*1. Whether the Alleged FLSA Claim Can Serve as a Basis for a Section 1983 Claim*

Plaintiff does not dispute that an FLSA claim cannot serve as a basis for a Section 1983 claim. *See, e.g., Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (recognizing that "plaintiffs could not enforce their FLSA rights by way of a § 1983 action"). Instead, Plaintiff contends that Defendants mischaracterize Counts IV and V. Plaintiff notes that she does not base Counts IV and V on Defendants' failure to provide her with reasonable break times for expressing breast milk, a violation of the FLSA. She brings Counts IV and V on the basis of her gender as a female, a protected category, and Defendants' disparate treatment of her due to her status as a nursing female. In fact, Plaintiff does not mention the FLSA in Counts IV and V.

Considering the Court's resolution of the other issues raised by the Motion for Summary Judgment, the Court need not address this particular issue at this time.

*2. Whether Plaintiff can Bring a Section 1983 Claim against the FPD*

Plaintiff does not contest that police departments "are not suable entities under § 1983." *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381 at *3 (10th Cir. 1992). Consequently, to the extent Counts IV and V allege Section 1983 claims against the FPD, those claims are subject to summary judgment as a matter of law.

*3. Whether the Section 1983 Claims Against the City of Farmington Fail Because Plaintiff has not Demonstrated that any City Policy or Custom Caused Her Injury*

"[T]o establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom

7

exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1212–16 (D.N.M. 2015) (citing *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)).

As to the first element, Plaintiff alleges a violation of the Fourteenth Amendment's equal protection clause. "[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172–73 (10th Cir. 2011) (quoting *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir.1998)).

In this case, Plaintiff does not provide any evidence that Johnston or Hebbe treated her differently from similarly situated males, i.e., males who required breaks during work hours for medical reasons. *See Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018) (explaining that "[i]ndividuals are similarly situated only if they are alike in all relevant respects" (quoting *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018)). She simply provides evidence that Defendants treated her differently by being "disrespectful" to her. Notably, "there is no constitutional right to respectful treatment by a supervisor." *Wilson v. Ontario Cty. Sheriff's Dep't*, 2014 WL 3894493, at *7 (W.D.N.Y.). Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Johnston or Hebbe violated Plaintiff's right to equal protection under the Fourteenth Amendment.

With respect to the second element, the existence of a city policy or custom, "[a]n official policy can be shown through an official decision or statement." *Ostrowski v. City of Montrose*, 655 Fed. Appx. 612, 614 (10th Cir. 2016). "A 'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)

(citation omitted). Put another way, a custom consists of "continuing, persistent and widespread" actions by employees. *Id.* (citation omitted). "In attempting to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Id.*

Plaintiff alleges in Count IV that there was "a policy or custom of having nursing mothers conform their workplace behavior and duties to the same behavior and duties of non-nursing officers." (Doc. 1) at ¶ 80. In Count V, Plaintiff alleges that "[t]he policies and procedures of the FPD were deliberately indifferent to [Plaintiff's] rights and privileges as a nursing mother." *Id.* at ¶ 95.

Plaintiff has not produced evidence of either an official policy requiring nursing officers' workplace behavior to conform to that of non-nursing officers, or an official policy that is deliberately indifferent to nursing officers. Furthermore, Plaintiff does not produce evidence that Johnston and Hebbe treated other nursing officers like they treated Plaintiff. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988) (finding no custom existed, in part, because plaintiff did not attempt to prove that defendant's actions were "ever directed against anyone other than himself"). Consequently, Plaintiff has failed to demonstrate that Johnston and Hebbe's actions toward her constituted a "continuing, persistent and widespread" practice or custom that had the force of a *de facto* policy by the City of Farmington. A reasonable jury viewing the evidence in the light most favorable to Plaintiff, therefore, could not find that the City of Farmington had a policy or custom that violated Plaintiff's right to equal protection under the Fourteenth Amendment.

However, Plaintiff now argues in her response to the Motion for Summary Judgment that the policy and custom was to have no policy to protect female nursing mothers until the City of Farmington implemented its August 2018 breast feeding and breast milk expressing policy. Significantly, despite Plaintiff's contrary assertions, Counts IV and V do not allege that an absence of a policy or custom caused the alleged violations of the equal protection clause.

"Normally a claim or theory that is not adequately raised in the complaint will not be considered." *Fuqua v. Lindsey Mgmt. Co.*, 321 Fed. Appx. 732, 734 (10th Cir. 2009). Nonetheless, the Tenth Circuit has "interpret[ed] the inclusion of new allegations in a response to a motion for summary judgment[] as a potential request to amend the complaint." *Id.* at 735 (quoting *Martinez v. Potter,* 347 F.3d 1208, 1211 (10th Cir. 2003)). Even so, a court can decline to consider such a new allegation or claim as a request to amend the complaint if the non-movants "did not provide the district court with adequate notice that they wanted to do so." *Id.* Lack of adequate notice to the court occurs if the non-movants "never sought leave to file an amended complaint, they never asked that their response to summary judgment be treated as a request to amend, and they never filed an amended complaint." *Id.* That is the case here. Accordingly, the Court does not consider Plaintiff's new claim that the absence of policy or custom was the policy or custom.

In sum, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Plaintiff meets the first two elements required for municipal liability: an underlying equal protection violation and a municipal policy or custom. Hence, municipal liability does not attach to the City of Farmington under Section 1983. The City of Farmington, therefore, is entitled to summary judgment as to Counts IV and V.

*4. Whether Qualified Immunity Precludes Any Section 1983 Claim Against Johnston and Hebbe in their Individual Capacities*

To defeat Johnston and Hebbe's qualified immunity defense, Plaintiff has the heavy burden of demonstrating that Johnston and Hebbe violated Plaintiff's Fourteenth Amendment right to equal protection. As discussed with respect to the municipal liability issue, Plaintiff has failed to set forth evidence from which a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could find that Johnston and Hebbe violated Plaintiff's equal protection rights under the Fourteenth Amendment. Consequently, Johnston and Hebbe are entitled to qualified immunity and summary judgment on Counts IV and V.

IT IS ORDERED that

1. Defendants' Motion for Summary Judgment as to All 42 U.S.C. § 1983 Counts of Plaintiff's Complaint (Doc. 51) is granted;

2. summary judgment will be granted in Defendants' favor on Counts IV and V of the Complaint (Doc. 1); and

3. Counts IV and V will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE