IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRITTANY ALLISON,

      Plaintiff,

vs.                                         Civ. No. 18-401 KG/SCY

THE CITY OF FARMINGTON,
FARMINGTON POLICE DEPARTMENT,
STEVEN HEBBE, in his individual capacity, AND
BRIAN JOHNSTON, in his individual capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motion for Summary Judgment as to All State Law Counts of Plaintiff's Complaint (Motion for Summary Judgment), filed March 4, 2019. (Doc. 50). Plaintiff responded on April 15, 2019, and Defendants replied on May 13, 2019. (Docs. 56 and 63). Having considered the Motion for Summary Judgment, the briefing, and relevant evidence, the Court grants the Motion for Summary Judgment, in part, as described below.

As an initial matter, Plaintiff moves to strike the "Introduction" section of the Motion for Summary Judgment. Plaintiff asserts that (1) neither the Local Rules nor the Federal Rules of Civil Procedure allow an "Introduction" in a motion for summary judgment, and (2) the rules require a summary judgment movant to set forth numbered statements of material facts with citations to the record. D.N.M. LR-Civ. 56.1(b); Fed. R. Civ. P. 56(c)(1). Aside from the "Introduction," Defendants, in fact, have a numbered "Undisputed Material Facts" section with citations to the record. Interestingly, Plaintiff also included an "Introduction" section in her motion for summary judgment. (Doc. 43). In accordance with the rules on motions for summary

judgment, the Court does not rely on narrative introductory sections to decide motions for summary judgment. Consequently, the Court considers only Defendant's "Undisputed Material Facts" section to decide the Motion for Summary Judgment. That being the case, Court declines to strike the "Introduction."

## A. Background

### 1. Plaintiff's Complaint (Doc. 1)

Plaintiff, a former police officer with the Farmington Police Department (FPD), brings this employment lawsuit against the FPD, the City of Farmington, FPD Chief of Police Steven Hebbe (in his individual capacity), and FPD Corporal Brian Johnston (in his individual capacity). Plaintiff's claims arise from alleged issues she had beginning in January 2017 and ending in July 2017 related to her ability to express breast milk while employed by the FPD. Johnston was Plaintiff's direct supervisor during the times relevant to this lawsuit.

The Motion for Summary Judgment pertains to Counts III, VII, VIII, and IX, Plaintiff's state law claims. The Court, however, has already dismissed Count III and Plaintiff agrees to "the summary judgment dismissal of Count IX…." (Doc. 69); (Doc. 56) at 16. Plaintiff further concedes that she cannot bring Count VIII against Johnston and Hebbe in their individual capacities. (Doc. 56) at 16. Therefore, the Court only addresses whether Defendants are entitled to summary judgment as to Count VII, and whether the City of Farmington and the FPD are entitled to summary judgment as to Count VIII.

Count VII is a breach of an implied contract of employment claim. Plaintiff alleges that Defendants breached the implied contract of employment by violating various policies and procedures, including policies and procedures on

> promotions, light duty, prohibitions against workplace discrimination, harassment, and hostile work environment, formal investigation of complaints, protection of due process

2

rights, departmental investigations, retaliation, and adherence of employee conduct to federal and State laws.

(Doc. 1) at ¶ 126.

Count VIII is a New Mexico Whistleblower Protection Act (WPA) claim. Plaintiff

alleges that she communicated to the FPD administration and others at the City of Farmington

unfair and discriminatory practices, allegations of differential treatment, practices in violation of the [City of Farmington's] and the FPD's policies and procedures, the intentional inaction of the administrators of the FPD with respect to abiding by policies and laws, complaints of pain and the deleterious health care effects of Johnston's decision on her and her child, and failures to address her legitimate concerns.

*Id.* at ¶ 130. Plaintiff further alleges that

[o]ver time, these communications from [Plaintiff] reiterated concerns about violations of her statutory rights and privileges, violations of constitutional rights, and the improper use and interpretation of [City of Farmington] and FPD policies to harm the terms and conditions of [Plaintiff's] employment, herself, and her child.

*Id.* Plaintiff maintains that as a result of these communications the City of Farmington and the

FPD retaliated against her by creating a hostile work environment, refusing to promote her, and

creating "workplace alienation, among other adverse employment actions." *Id.* at ¶ 134.

2. *Factual Summary*[1]

In November 2016, Plaintiff returned from maternity leave to work in her FPD patrol

position during the swing shift. (Doc. 1) at ¶ 14. Plaintiff's supervisor on the swing shift,

Tamara Smith, complied with Plaintiff's request for breaks to express breast milk. *Id.* at ¶ 15.

On January 8, 2017, the FPD moved Plaintiff to a day shift. *Id.* at ¶ 16. Johnston

supervised Plaintiff beginning in mid-January 2017. (Doc. 55-1) at 21, depo. at 164. In the

beginning of February, Plaintiff told Johnston she was breast feeding and expressing breast milk.

---

[1] Unless otherwise noted, this factual summary contains uncontested material facts viewed in the light most favorable to Plaintiff.

(Doc. 56-1) at 8, depo. at 80. Johnston told Plaintiff to express breast milk during her lunch break. (Doc. 55-1) at 1. Plaintiff, however, often could not do so because of the call load. *Id.* Because Plaintiff was not able to express enough breast milk at work, her milk supply dwindled causing health problems for her child. *Id.*

According to Plaintiff, Johnston would "shut her down" when she tried to speak to him about breaks to express breast milk. *Id.* at 20, depo. at 113. Johnston would also "ignore" Plaintiff, glare at her, give her "dirty looks," and wrote her "up for everything that in the past happened…." *Id.* at 21, depo.at 164-65; (Doc. 51-1) at 3, depo. at 207.

On April 17, 2017, Johnston contacted Lt. Casey Malone about Plaintiff's work performance. (Doc. 55-1) at 1. Malone advised Johnston to speak with Plaintiff. *Id.* Johnston spoke with Plaintiff later that day and reported to Malone that Plaintiff mentioned she had post-partum depression. *Id.* Malone then met with both Johnston and Plaintiff noting that he sensed Plaintiff was uncomfortable in Johnston's presence. *Id.* Malone, therefore, asked Johnston to step out of the room. *Id.* Plaintiff opened up to Malone, stating she was feeling overwhelmed. *Id.* Plaintiff also stated she was unable to express breast milk at work often enough, which caused her milk to dwindle and issues with her baby. *Id.* Plaintiff told Malone that Johnston asked her to express breast milk at lunch but because of the call load she was unable to do so. *Id.* Moreover, because Plaintiff moved outside of the city limits, Plaintiff could no longer go home to express breast milk and had to use the women's locker room and the "ICC sub station." *Id.* Plaintiff did not feel comfortable expressing breast milk at those locations because people walked in. *Id.* Malone told Plaintiff that whenever she needed to express breast milk she would be permitted to do so. *Id.*

Malone spoke with Johnston shortly thereafter about the situation.[2]  *Id.*  Malone then spoke with Hebbe and they came up with a better place for Plaintiff to express breast milk.  *Id.* Hebbe further stated that, if necessary, Plaintiff could be temporarily reassigned to a "light-duty schedule."  *Id.*

Hebbe was not aware of state or federal law regarding the provision of either a time or place for female employees to express breast milk until the spring of 2017 when Malone brought the issue up.  (Doc. 43-1) at 4, depo. at 15-16.

The next day, April 18, 2017, Malone again met with Plaintiff.  (Doc. 55-1) at 2.  He told Plaintiff she could use a vacant office with a couch and other furniture, and locks, to express breast milk.  *Id.*  Malone also offered the option of a four to six-week temporary reassignment. *Id.*  Plaintiff told Malone she would think about the temporary reassignment and get back to him in a few days.  *Id.*

On April 19, 2017, Malone spoke with Sgt. Brandon Lane who previously met with Plaintiff on March 21, 2017, when he discussed with Plaintiff the time she needed for expressing breast milk.  *Id.*; (Doc. 56-1) at 12, depo. at 110.  Lane indicated that Plaintiff "was free to do so whenever she needed to."  (Doc. 55-1) at 2.  Plaintiff also told Lane that she could use her mother-in-law's residence for expressing breast milk.  *Id.*

On April 21, 2017, Plaintiff contacted Malone and advised him that she wanted to be temporarily assigned to a modified duty status for about a week and possibly longer.  *Id.* Plaintiff indicated that the modified duty status assignment might help her regain her milk supply.  *Id.*

---

[2] Johnston informed Malone he only told Plaintiff to try to express breast milk earlier in the day because of the afternoon call load.  (Doc. 55-1) at 1.

Plaintiff began the temporary assignment, an administrative position, on April 24, 2017. (Doc. 55-1) at 1. The administrative position provided Plaintiff with a predicable schedule and access to a private room. *Id.* at 4, depo. at 39-40. Plaintiff spent five weeks working in the administrative position. *Id.* at 21, depo. at 164. Johnston resumed his supervision of Plaintiff after she returned to her regular patrol position and supervised Plaintiff until mid-July 2017. *Id.* Johnston continued to glare at Plaintiff and ignore her, which created a tension-filled environment. *Id.*, depo. at 165.

On June 27, 2017, Johnston met with Plaintiff to write her up and told her that if she wanted a promotion to the district coordinator unit she would "need to leave [his] office with a smile because supervisors are watching how [she] handle[s] this." *Id.* at 22, depo. at 166. Plaintiff, in fact, applied for that promotion but did not receive it. *Id.* at 23-24, depo. at 181-83.

Later that same day, Plaintiff met with Hebbe to discuss Johnston's behavior. *Id.* at 22, depo. at 167. Hebbe spoke to her in a tone that she perceived as "berating." *Id.* Hebbe also told Plaintiff to "not hold onto negative things because it can affect [Plaintiff's] ability to promote in the future…." *Id.* at 22, depo. at 167-68. In addition, Hebbe told Plaintiff the situation with Johnston "was all a misunderstanding." *Id.* at 22, depo. at 168. After the June 27, 2017, meeting, Hebbe treated Plaintiff coldly and ignored her. *Id.* at 22, depo. at 169.

Plaintiff testified at her deposition that Hebbe and Johnston treated male employees with more respect than they treated her. (Doc. 51-1) at 3, depo. at 206-07. Even so, at some point, Plaintiff admits that Johnston "weakly apologized" to her by stating, "I don't know what else to tell you other than I've told you I'm sorry four times." (Doc. 55-1) at 22, depo. at 168.

On August 14, 2018, the FPD implemented a "breastfeeding and breast milk expression" policy. *Id.* at 31. Hebbe approved that policy.

*B. The Motion for Summary Judgment*

Defendants move for summary judgment on Count VII for two reasons. First, Defendants argue that Plaintiff has not presented evidence that they breached an implied employment contract. Second, Defendants argue that Plaintiff does not seek damages she can recover under a breach of implied employment contract claim.

Defendants move for summary judgment on Count VIII for two reasons. First, Defendants contend that Plaintiff's communications to the City of Farmington and the FPD were merely personal personnel grievances and, thus, not protected by the WPA. Second, Defendants contend that the City of Farmington and the FPD did not retaliate against Plaintiff for her communications.

*C. Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*D. Discussion*

    *1. Count VII: Breach of Implied Employment Contract Claim*

Defendants do not dispute that an implied employment contract exits in this case. (Doc.

50) at 14. Defendants, however, assert that Plaintiff has not provided evidence of a breach of

that contract. Defendants contend that Plaintiff has failed to "specifically enumerate what

policies and procedures Defendants violated or when those alleged violations occurred." (Doc.

50) at 14-15. *See Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, ¶ 7, 108 N.M. 424

(recognizing that in implied employment contract context "employee could reasonably expect his

employer to conform to the procedures it outlined" in personnel manual). Plaintiff maintains that

Defendants have not carried their summary judgment burden because Defendants fail to cite

specific policies or procedures which Plaintiff contends they violated, and Defendants make

"only general, conclusory statements on nonperformance." (Doc. 56) at 13.

It is well-established that in a summary judgment motion "the burden on the moving

party may be discharged by 'showing'—that is, pointing out to the district court—that there is an

absence of evidence to support the nonmoving party's case." *Schneider*, 717 F.3d at 767 (quoting

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). Defendants did exactly that by "pointing

out" that Plaintiff has not presented evidence of specific policies and procedures which she

alleges Defendants violated to breach the implied employment contract. *See also* NMRA, Rule

13-304 (2018) ("A party seeking a recovery … has the burden of proving every essential element

of the claim….").

In responding to a summary judgment motion, the burden shifts to the nonmovant who

"may not rest upon the mere allegations or denials of his pleading, but must set forth specific

facts showing that there is a genuine issue for trial." *Schneider*, 717 F.3d at 767 (quoting

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Plaintiff seemingly relies on her general allegations in Count VII rather than setting forth specific policies and procedures she claims Defendants have violated. Hence, Plaintiff has failed to carry her summary judgment burden to provide some evidence of a breach of the implied employment contract to establish a genuine issue for trial. For that reason, the Court will grant summary judgment on Count VII.

Having determined that Count VII is subject to summary judgment as discussed above, the Court need not address whether Plaintiff seeks damages she can recover under a breach of implied employment contract claim.

*2. Count VIII: the WPA Claim*

The WPA provides that it is unlawful for a public employer to "take any retaliatory action against a public employee because the public employee ... communicates to the public employer … information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act…." NMSA 1978, § 10–16C–3(A) (2013 Repl. Pamp.). A "'retaliatory action' means taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment…." NMSA 1978, § 10–16C–2(D) (2013 Repl. Pamp.). Moreover, the WPA has a causation element: "[t]he public employee must take the retaliatory action *because of* a protected communication—*i.e.* there must be a causal connection between the retaliatory action and the protected communication." *Walton v. New Mexico State Land Office*, 113 F. Supp. 3d 1178, 1200 (D.N.M. 2015).

The WPA also provides that an employer does not violate the WPA if the action against the employee was for a "legitimate business purpose unrelated to conduct prohibited pursuant to

9

the Whistleblower Protection Act and that retaliatory action was not a motivating factor."

NMSA 1978, § 10-16C-4(B) (2013 Repl. Pamp.).

### a. Whether the WPA Protected Plaintiff's Communications

Defendants argue first that the WPA does not protect Plaintiff's communications.  The

WPA protects employees who engage in "'whistleblowing' that benefits the public by exposing

unlawful and improper actions by government employees…."  *Wills v. Bd. of Regents of Univ. of*

*New Mexico*, 2015-NMCA-105, ¶ 20, 357 P.3d 453.   On the other hand, the WPA does not

protect employees "from communications regarding personal personnel grievances that primarily

benefit the individual employee."  *Id.*

Defendants argue that Plaintiff's communications to the City of Farmington and the FPD

were mere personal personnel grievances.  Plaintiff, however, notes that her communications to

the City of Farmington and the FPD that she was legally entitled to work breaks to express breast

milk led to the development of the August 2018 policy on breast feeding and breast milk

expression, "a benefit far beyond any personal benefit to [Plaintiff]."  (Doc. 56) at 14.

Moreover, Plaintiff cites *Dart v. Westall* to support her position that the WPA protects reports of

violations of law like she made to the City of Farmington and the FPD.  2018-NMCA-061, ¶¶ 8-

11, 428 P.3d 292 (finding sufficient evidence that WPA protected communications that

defendants violated state law regarding handling of child abuse cases).

On the other hand, Defendants assert that Plaintiff's communications to her supervisors

did not rise to the level of serving the public interest required by the WPA.  First, Defendants

note that Plaintiff's communications did not assist "in the elimination of *fraud, waste, abuse, and*

*unnecessary Government expenditures.*"  *Montgomery v. E. Corr. Inst.*, 377 Md. 615, 632-33,

835 A.2d 169, 180 (2003) (quoting *Spruill v. Merit Systems Protection Bd.,* 978 F.2d 679, 692

(Fed.Cir.1992) (discussing federal WPA) (emphasis added)) (quoted in *Wills*, 2015-NMCA-105

at ¶ 20). Notably, the remainder of the *Montgomery* court's quote by the *Spruill* court states that

"[t]his is a description of the results of the type of public disclosure *generally* evoked by the term

'whistleblowing' …." *Id.* at 633, 835 A.2d at 180 (emphasis added). The *Montgomery* court

further describes how the federal WPA also protects "violation of the law" disclosures, which

Plaintiff contends she engaged in here. *Id.* at 641-42, 835 A.2d at 185. Accordingly,

Defendants' reliance on *Montgomery* is misplaced.

Next, Defendants assert that Plaintiff fails to dispute their Undisputed Material Fact No.

28, which notes that Plaintiff alleges in Count VIII that her communications focused on her

personal situation as opposed to benefiting the public. Undisputed Material Fact No. 28 states:

> Plaintiff's communications with the command of the Police Department were to address
> her concerns regarding "the terms and conditions of [Plaintiff's] employment, herself,
> and her child." Complaint, [Doc. 1], at ¶ 130.

(Doc. 50) at 10. It is undisputed that Plaintiff communicated with Smith, Johnston, Lane,

Malone, and Hebbe about needing an adequate time and place to express breast milk. However,

Hebbe was unaware that the actions of the FPD violated any laws until the spring of 2017 when

he met with Malone to address Plaintiff's complaints. As a result of Plaintiff's complaints,

Hebbe subsequently approved a breastfeeding and breast milk expression policy to comply with

the law. Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could

find that Plaintiff's communications were not just personal personnel grievances that would

primarily benefit just Plaintiff. A reasonable jury could also find that Plaintiff's communications

benefitted the public by exposing unlawful and improper actions by the City of Farmington and

FPD employees.

Defendants further assert that the *Dart* case is distinguishable from this case on the facts.

In *Dart*, "Plaintiff's WPA claim stemmed from his communication to Defendants that he

believed Defendants were in violation of [state law] by failing to promptly and immediately

investigate reports of child abuse and neglect referred to FPD from the New Mexico Children,

Youth and Families Department (CYFD)." *Dart*, 2018-NMCA-061 at ¶ 1.   Unlike this case, the

communications in *Dart* did not concern the plaintiff's employment rights.  Nonetheless, *Dart*

does not prohibit the kind of communication at issue here that benefits both the public and

Plaintiff.  In fact, New Mexico courts agree that "whistleblower laws in general 'are meant to

encourage employees to report illegal practices without fear of reprisal by their employers.'"

*Janet v. Marshall*, 2013-NMCA-037, ¶ 21, 296 P.3d 1253, 1258–59 (quoting *Haley v. Retsinas,*

138 F.3d 1245, 1250 (8th Cir.1998) ("These statutes generally use broad language and cover a

variety of whistleblowing activities.  Accordingly, when the meaning of the statute is unclear

from its text, courts tend to construe it broadly, in favor of protecting the whistleblower.").

Hence, while distinguishable on the facts, *Dart* does not necessarily prohibit Plaintiff's WPA

claim as a matter of law.

For all of the above reasons, the Court determines that a reasonable jury considering the

evidence in the light most favorable to Plaintiff could find that the WPA protected Plaintiff's

communications.

> b. *Whether the City of Farmington and the FPD Retaliated Against Plaintiff for*
> *her Communications*

Next, Defendants contend that they did not retaliate against Plaintiff for her

communications.  In determining retaliation under the WPA, one considers whether the

communication "was a motivating factor in the retaliatory conduct…." *Dart*, 2018-NMCA-061

at ¶ 19; *see also* NMSA 1978, § 10-16C-4 (B) (employer does not violate WPA if "retaliatory

action was not a motivating factor").   The "motivating factor" requirement necessarily falls

within the causation element of the WPA.

Plaintiff contends in her response that the City of Farmington and the FPD engaged in the following retaliatory actions after she made communications protected by the WPA: "(1) failure to promote; (2) hostile work environment; (3) loss of overtime and (4) unfair disciplinary action in circumstances where the disciplinary action was not taken at the time of any alleged misconduct." (Doc. 56) at 15. The Court notes that Plaintiff does not include loss of overtime or an unfair disciplinary action as alleged retaliatory actions in Count VIII of her Complaint. *See* (Doc. 1) at ¶ 134 (stating retaliation took form of "hostile work environment, refusals to hire and promote, and workplace alienation, among other adverse employment actions.").

Failure to promote is an adverse employment action for purposes of retaliation. *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (listing "failing to promote" as adverse employment action). Plaintiff, however, does not present any evidence to indicate that her protected communications motivated the decision not to promote her. For instance, Plaintiff does not provide any information on whether the promoted applicant was the most qualified applicant. In other words, Plaintiff fails to provide evidence that she was the most qualified applicant but, nonetheless, did not receive the promotion. Without more, a reasonable jury viewing the evidence in the light most favorable to Plaintiff, could not find that Plaintiff's protected communications were a motivating factor or cause in the decision not to promote Plaintiff. The City of Farmington and the FPD, therefore, are entitled to summary judgment on the WPA retaliation claim based on failure to promote.

To establish a hostile work environment claim, a plaintiff must show that the employer's harassment was sufficiently "severe and pervasive" to create a hostile or abusive work environment. *Herald v. Bd. of Regents of Univ. of New Mexico*, 2015-NMCA-104, ¶ 53, 357 P.3d 438. To determine if a plaintiff has shown a hostile work environment, courts

13

look at "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" A plaintiff must show that the work environment was both objectively and subjectively hostile: "one that a reasonable person would find hostile or abusive and one that the employee did perceive as being hostile or abusive." "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."

*Ulibarri v. State of New Mexico Corr. Acad.*, 2006-NMSC-009, ¶ 12, 139 N.M. 193 (citations omitted).

Plaintiff contends that the hostile work environment did not consist of just "dirty looks and glares." (Doc. 56) at 16. Plaintiff specifies that the hostile work environment consisted of Johnston subjecting her to threats by telling her that if she wanted a promotion she needed to "smile" after he wrote her up, and Hebbe subjecting Plaintiff to threats by telling her to "not hold onto negative things" because doing so could affect her promotability. Plaintiff further asserts that the hostile work environment included how Johnston and Hebbe ignored her.

The Court first notes that Plaintiff has not presented evidence that Hebbe and Johnston's actions, as described above, interfered with Plaintiff's work performance. Moreover, Johnston and Hebbe made the above two isolated comments at the end of June 2017, over four months after Plaintiff initially approached Johnston in February 2017 about the need for breaks and over two months after the April 2017 meetings with Malone. Interestingly, Plaintiff fails to provide any evidence to show that Johnston's write-ups were not legitimate or that the write-ups adversely affected the terms and conditions of her employment. "A write-up alone, without any indication that it was accompanied by a reduction in pay, benefits, responsibilities, or some other adverse effect, is insufficient to establish an adverse employment action." *Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1367 (M.D. Fla. 2016). *Cf. Saville v. Int'l Bus. Machines Corp.*, 188 Fed. Appx. 667, 670 (10th Cir. 2006) (citation omitted) (agreeing that "criticism in

14

performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions"). Furthermore, even if Plaintiff subjectively believed that Hebbe's single comment about "hold[ing] onto negative things" constituted a threat, Plaintiff has not produced evidence that the comment, in fact, changed the terms and conditions of her employment. In addition, Plaintiff has failed to provide evidence how the unspecified times Johnston and Hebbe ignored her during a span of several months changed the terms of her employment or significantly affected the conditions of her employment.

A reasonable jury viewing the totality of the above circumstances in the light most favorable to Plaintiff could not find that the two isolated comments by Johnston and Hebbe, and Johnston and Hebbe's ignoring of Plaintiff on a non-specified number of occasions constituted severe and pervasive harassment amounting to a hostile or abusive work environment. Consequently, the City of Farmington and the FPD are entitled to summary judgment on the WPA retaliation claim premised on a hostile work environment.

As noted above, Plaintiff did not mention in Count VIII that the alleged retaliatory conduct also consisted of loss of overtime and unfair disciplinary action.[3] "Normally a claim or theory that is not adequately raised in the complaint will not be considered." *Fuqua v. Lindsey Mgmt. Co.*, 321 Fed. Appx. 732, 734 (10th Cir. 2009). Nonetheless, the Tenth Circuit has "interpret[ed] the inclusion of new allegations in a response to a motion for summary judgment[] as a potential request to amend the complaint." *Id.* at 735 (quoting *Martinez v. Potter,* 347 F.3d

---

[3] The Court observes that Count VIII also vaguely refers to retaliation in the form of "other adverse employment actions." (Doc. 1) at ¶ 134. This general allegation violates Fed. R. Civ. P. 8(a)(2) which requires that a complaint "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curium); Fed. R. Civ. P. 8(a)(2) (requiring that pleading contain "short and plain statement of the claim showing that the pleader is entitled to relief").

1208, 1211 (10th Cir. 2003)).  Even so, a court can decline to consider such a new allegation or claim as a request to amend the complaint if the non-movants "did not provide the district court with adequate notice that they wanted to do so." *Id.*  Lack of adequate notice to the court occurs if the non-movants "never sought leave to file an amended complaint, they never asked that their response to summary judgment be treated as a request to amend, and they never filed an amended complaint." *Id.*  That is the case here.  Hence, the Court does not consider loss of overtime and unfair disciplinary action as bases for a WPA retaliation claim.

For all of the foregoing reasons, the Court determines that a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could not find that the City of Farmington and the FPD violated the WPA by retaliating against Plaintiff for communicating in good faith an unlawful or improper act.  Consequently, the Court will grant summary judgment on Count VIII.

IT IS ORDERED that

1.  Plaintiff's request to strike the "Introduction" to the Motion for Summary Judgment is denied;

2.  Defendants' Motion for Summary Judgment as to All State Law Counts of Plaintiff's Complaint (Doc. 50) is granted, in part;

3.  the Court will enter summary judgment in favor of Defendants on Counts VII, VIII, and IX of the Complaint; and

4.  the Court will dismiss Counts VII, VIII, and IX with prejudice.

_____
UNITED STATES DISTRICT JUDGE